1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT FOR THE

7                          EASTERN DISTRICT OF CALIFORNIA

8

9   LORENE OGLESBY, MARK RANDAL    )        No. CV-F-05-00873 REC TAG
    OGLESBY, CHRISTINE SUSANNE     )
10  HINKLE, WAYNE WILLIAM          )        ORDER DENYING DEFENDANT'S
    OGLESBY, JULIE MICHELLE HAY,   )        MOTION TO DISMISS, OR IN
11  individually and as the        )        THE ALTERNATIVE TO STAY
    Successors in Interest of      )        PENDING OUTCOME OF PARALLEL
12  ROBERT OGLESBY, Deceased.      )        STATE ACTION.
                                   )
13                 Plaintiffs,     )        (Doc. 16)
                                   )
14            vs.                  )
                                   )
15  COUNTY OF KERN, KERN COUNTY    )
    SHERIFF'S DEPARTMENT, SHERIFF  )
16  MACK WIMBISH, KERN MEDICAL     )
    CENTER, and DOES 1 TO 100,     )
17  inclusive,                     )
                                   )
18                 Defendants.     )
                                   )
19  _____)

20       On October 31, 2005, the Court heard Defendant County of

21  Kern's motion to dismiss or stay based on the principles of

22  Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669

23  (1971) or Colorado River Water Conservation District v. United

24  States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

25  //

26  //

                                   1

1  **I.    Background**

2      Robert Oglesby was arrested following a domestic disturbance

3  and taken to jail.  While incarcerated by County of Kern (the

4  "County"), he suffered a broken leg.  After treatment at Kern

5  Medical Center, which the County owned and operated, he was

6  eventually discharged from custody.  He received subsequent

7  medical care at other facilities.  The broken leg eventually

8  became infected and was amputated.

9      On June 18, 2004, Mr. Oglesby and Lorene Oglesby, his wife,

10  filed a tort claim with the County alleging that it violated Mr.

11  Oglesby's civil rights by using excessive force and providing

12  deficient medical care and claiming loss of consortium.  On

13  September 30, 2004, Mr. and Mrs. Oglesby filed suit in Superior

14  Court of California, County of Kern (the "Superior Court")

15  against the County, Kern County Sheriff's Department, Sheriff

16  Mack Wimbish, and Kern Medical Center (collectively

17  "Defendants").  Oglesby v. County of Kern, No. S-1500-CV 253871

18  AEW (Kern County Super. Ct. Sept. 30, 2004); see Mot. Ex. A.  The

19  complaint sought relief for various constitutional violations

20  under 42 U.S.C. section 1983, assault and battery, negligence,

21  intentional infliction of emotional distress, and failure to

22  summon medical care.

23      On November 9, 2004, Mr. Oglesby died of cardiopulmonary

24  arrest caused by a stroke, aggravated by various factors.  A new

25  tort claim was presented to the County on November 18, 2004.  On

26

2

May 17, 2005, Mrs. Oglesby and four of Mr. Oglesby's children[1] (collectively "Plaintiffs") filed another suit in Superior Court against Defendants.  Oglesby v. County of Kern, No. S-1500-CV 255515 AEW (Kern County Super. Ct. May 17, 2005); see Mot. Ex. B. The complaint sought recovery on various theories under section 1983 and for wrongful death.   Defendants timely answered the complaint.

On June 13, 2005, the Superior Court consolidated the two Oglesby cases.  Opp'n Ex. D.  Subsequently, Defendants propounded form and special interrogatories and requests for admissions from Plaintiffs.

On July 1, 2005, Plaintiffs filed a request for dismissal with the Superior Court.  Later in the day, Plaintiffs filed suit in this Court.  The federal complaint alleges causes of action under section 1983 relating to excessive force and failure to provide adequate medical care, as well as causes of action for assault and battery, negligence, failure to summon medical care, and wrongful death.

On July 6, 2005, the Superior Court rejected Plaintiffs' request for dismissal on the ground that the request was incomplete.  Plaintiffs corrected the defect and both actions were dismissed on July 14, 2005.  Plaintiffs did not immediately notify Defendants that they had dismissed the action.  Defendants

[1]In all, Plaintiffs are Mrs. Oglesby, Mark Randall Oglesby, Christine Susanne Hinkle, Wayne William Oglesby, and Julie Michelle Hay.

3

1  thus filed a motion to compel in Superior Court on August 9,

2  2005, even though the cases were dismissed almost one month

3  before.

4  Defendants filed this motion on August 18, 2005.  Plaintiffs

5  did not notify Defendants of the voluntary dismissal until August

6  22, 2005, after they filed this Motion.  Woods Supp. Decl. at 2.

7  **II.  Discussion**

8  **A.   Younger Abstention**

9  In Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed.

10  2d 669 (1971), the Supreme Court held that federal courts should

11  not enjoin pending state criminal prosecutions absent

12  extraordinary circumstances.  The Court held, based on principles

13  of equity and comity, that "a proper respect for state functions"

14  requires a federal court to generally decline to hear such a

15  case.  Id. at 432.  The Court subsequently extended the

16  principles it enunciated in Younger to certain types of civil

17  cases.  New Orleans Pub. Serv., Inc. v. Council of the City of

18  New Orleans ("NOPSI"), 491 U.S. 350, 367-68, 109 S. Ct. 2506, 105

19  L. Ed. 298 (1989).  The Younger principles apply to actions for

20  damages under section 1983.  Gilbertson v. Albright, 381 F.3d

21  965, 983 (9th Cir. 2004).  "Abstention is appropriate in favor of

22  a state proceeding if (1) the state proceedings are ongoing; (2)

23  the proceedings implicate important state interests; and (3) the

24  state proceedings provide an adequate opportunity to raise

25  federal questions."  Fresh Int'l Corp. v. Agric. Labor Relations

26  Bd., 805 F.2d 1353, 1357-58 (9th Cir. 1986) (citing Middlesex

4

1  County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432,

2  102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982)).

3      Plaintiffs contend that abstention is inappropriate because

4  the first and second Younger requirements are not met.

5              **1.  Ongoing State Proceedings**

6      Plaintiffs argue that the first requirement for Younger

7  abstention, that "state proceedings are ongoing," is not met

8  because here the state court case has been dismissed without

9  prejudice. See Chapman Decl. at ¶ 10.  The critical question for

10  determining whether proceedings are ongoing is whether the state

11  proceedings were underway before the federal proceedings began.

12  Kitchens v. Bowen, 825 F.2d 1337, 1341 (9th Cir. 1987) (citing

13  Fresh Int'l, 805 F.2d at 1358); see Gilbertson, 381 F.3d at 969

14  n. 4 ("The critical date for purposes of deciding whether

15  abstention principles apply is the date the federal action is

16  filed.").  In Kitchens, defendants in state court proceedings

17  paternity proceedings challenged certain AFDC regulations in

18  federal court.  Id. at 1338.  Even though certain defendants'

19  state proceedings were complete when the federal suit commenced,

20  the prior state proceedings were sufficient to meet the "ongoing"

21  requirement.  Id. at 1341.

22      Here, Plaintiffs filed the federal complaint on July 1,

23  2005.  The Superior Court did not dismiss the state action until

24  July 14, 2005.[2]  Not only had Plaintiffs filed a suit in state

25  ─────────────

26      [2]Plaintiffs' counsel points out that he attempted to
    voluntarily dismiss the state case on July 1, 2005, prior to filing

                              5

1 court prior to the "critical date" of July 1, 2005,

2 the state suit overlapped with the federal suit.  Therefore, the

3 requirement of "ongoing" state proceedings is met.

4 **2.   Important State Interests**

5 The second requirement for <u>Younger</u> abstention is that the

6 proceedings implicate important state interests.  <u>Fresh Int'l</u>,

7 805 F.2d at 1358.  The importance of the state interest can be

8 shown in noncriminal proceedings by their close relationship to

9 criminal proceedings, or where the proceedings are necessary to

10 vindicate important state policies or for the functioning of the

11 state judicial system.  <u>Gilbertson</u>, 381 F.3d at 973 (citing

12 <u>Middlesex</u>, 457 U.S. at 432); <u>see</u> <u>Huffman v. Pursue, Ltd.</u>, 420

13 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975) (state public

14 nuisance proceedings); <u>Juidice v. Vail</u>, 430 U.S. 327, 97 S. Ct.

15 1211, 51 L. Ed. 2d 376 (1977) (state contempt proceedings);

16 <u>Trainor v. Hernandez</u>, 431 U.S. 434, 97 S. Ct. 1911, 52 L. Ed. 2d

17 486 (1977) (state civil enforcement action).

18 Generally, the state's interest is shown by the fact that

19 the state instituted the state proceedings.  <u>Fresh Int'l</u>, 805

20 F.2d at 1360 n. 8.  Some courts have ruled out abstention on the

21 ground that the plaintiff in the state proceeding is also the

22 federal plaintiff.  <u>See</u> <u>Crawley v. Hamilton County Comm'rs</u>, 744

23 F.2d 28, 30 (6th Cir. 1984) (holding abstention appropriate where

24

25 the federal complaint.  Chapman Decl. at ¶ 7; <u>see</u> Chapman Decl. Ex.
   E.   This first dismissal request was rejected on July 6, 2005,
26 based on a flaw in the application.  Chapman Decl. Ex. G.

1   state plaintiffs filed the federal action and were not attempting

2   to use the federal courts to shield themselves from state court

3   enforcement efforts); Ky. W. Va. Gas Co. v. Pa. Pub. Util. Comm.,

4   791 F.2d 1111, 1117 (3d Cir. 1986) (denying Younger abstention on

5   the grounds that "'where Congress has granted concurrent

6   jurisdiction, a plaintiff is free to bring a suit in both the

7   state and federal forums for the same cause of action'").  Though

8   Younger abstention does not ordinarily apply when a federal

9   plaintiff is also the plaintiff in state court, more important to

10  the analysis is whether the plaintiff filed the state case

11  voluntarily or was compelled to do so by state law.  Fresh Int'l,

12  805 F.2d at 1360 n. 8 (applying Younger principles where

13  plaintiff filed the state case in response to an agency order

14  against it).

15      Here, the Plaintiffs filed the state case to obtain relief

16  for injuries that Defendants allegedly inflicted.  Defendants

17  contend that this case implicates a number of important state

18  interests that require abstention.  First, Defendants point to

19  the state interest in administration of its jails.  Second, the

20  case concerns, in part, medical malpractice, which California

21  regulates under its Medical Injury Compensation Reform Act,

22  sections 3333.1 and 3333.2 of the California Civil Code.  Mr.

23  Oglesby's death, allegedly caused by the malpractice, also

24  implicates California's wrongful death statute, California Civil

25  Procedure Code section 377.60.  Defendants further allege that

26  the case involves a determination of the degree to which the

County has statutory immunity to Plaintiffs' suit, under
California Government Code sections 840 through 845.6.  State
procedural requirements may also bar Plaintiffs' claims.

Defendants claim that the state law involved in this case
implicates a state interest and requires abstention.  In support,
Defendants cite Middlesex, 457 U.S. 423, for the proposition that
a federal action containing federal and state claims should be
dismissed "where the state claims predominate."  Middlesex made
no such holding.  To the contrary, the Middlesex Court focused
instead on the nature of the state claims and whether they were
closely analogous to criminal proceedings or were necessary to
vindicate state policies or for the functioning of the judicial
system.  Middlesex, 457 U.S. at 432.

Defendants have not explained how applying various
principles of state law in a case brought by a private party
implicates a state interest on par with criminal proceedings.  At
issue is whether Defendants must compensate Plaintiffs for
certain injuries.  Defendants do have an interest in *prevailing*
in the law suit, but this interest is not what the Middlesex
Court contemplated.  Rather the focus is on the character of the
state proceedings and the state's general interest.  See
Middlesex, 457 U.S. at 432; NOPSI, 491 U.S. at 365 (holding that
state's initiation of regulatory proceedings evinced a "general
interest" in regulation relevant to a Younger analysis, but its
interest in prevailing in the particular proceeding was
immaterial).

1      The state proceedings began when Plaintiffs sought recovery

2  based on certain actions by Defendants.  The suit only seeks to

3  vindicate Plaintiffs' interests in recovery.  Defendants have not

4  affirmatively pursued any of their interests against Plaintiffs.

5  Defendants are only involved in this case because Plaintiffs

6  haled them into court.  Thus the state suit is in all respects

7  voluntary.  Defendants did not file or order this suit to protect

8  any interest.  See Fresh Int'l, 805 F.2d at 1360 n. 8.  Instead,

9  its sole role is to defend itself from Plaintiffs' charges.  That

10 the federal court claimant is also the state court claimant is

11 strong evidence that the state lacks sufficient interest for

12 Younger abstention in this case.

13      The rationale that underlay Younger and its progeny, seems

14 to be starkly absent here.  No government entity has undertaken

15 in the state proceeding to enforce its laws, regulate any entity,

16 vindicate important state policies, or carry out any functions of

17 its judicial system.  See Middlesex, 457 U.S. at 432.  A decision

18 by a federal court in this case would not have a similar effect

19 to the injunction against a state criminal proceeding in Younger.

20 Rather, any such decision would simply resolve in federal court a

21 claim voluntarily brought by private entities against a

22 government entity.  This claim does not involve any important

23 state interests necessary to apply Younger principles to a civil

24 proceeding.

25      Therefore, Defendants' motion to stay or abstain based on

26 Younger principles is DENIED.

1          **B.   Stay or Dismissal under <u>Colorado River</u>**[3]

2          In <u>Colorado River Water Conservation District v. United</u>

3   <u>States</u>, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976),

4   the Supreme Court enunciated a theory by which federal courts

5   could refuse to exercise their jurisdiction based on

6   "considerations of 'wise judicial administration, giving regard

7   to conservation of judicial resources and comprehensive

8   disposition of litigation.'" <u>Id.</u> at 817.  Federal courts have a

9   "virtually unflagging obligation . . . to exercise the

10  jurisdiction given them." <u>Id.</u>  Because of this obligation, a

11  federal court may decline to hear cases under its jurisdiction

12  "'only in the exceptional circumstances where the order to the

13  parties to repair to the State court would clearly serve an

14  important countervailing interest.'" <u>Moses H. Cone</u>, 460 U.S. at

15  14 (quoting <u>Colorado River</u>, 424 U.S. at 813).

16         In deciding whether to stay or dismiss a case based on the

17  <u>Colorado River</u> rationale, a court should consider such factors

18  as:

19              (1) whether the state court first assumed
                jurisdiction over property;
20              (2) inconvenience of the federal forum;
                (3) the desirability of avoiding piecemeal
21              litigation;
                (4) the order in which jurisdiction was

22

23         [3]"'The <u>Colorado River</u> doctrine is not technically an
    abstention doctrine,' <u>Holder v. Holder</u>, 305 F.3d 854, 867 n. 4 (9th
24  Cir. 2002); therefore, a district court's decision declining to
    exercise federal jurisdiction pursuant to <u>Colorado River</u> is more
25  properly referred to as a stay or dismissal, as the case may be."
    <u>Smith v. Cent. Ariz. Water Conservation Dist.</u>, 418 F.3d 1028, 1032
26  (9th Cir. 2005).

1                   obtained by the concurrent forums;
                   (5) whether federal law or state law provides
2                   the rule of decision on the merits;
                   (6) whether the state court proceedings are
3                   inadequate to protect the federal litigant's
                   rights;
4                   (7) whether exercising jurisdiction would
                   promote forum shopping.

6 Holder v. Holder, 305 F.3d 854, 870-71 (9th Cir. 2002) (citing

7 Moses H. Cone, 460 U.S. at 15-16, 23, 26; Travelers Indem. Co. v.

8 Madonna, 914 F.2d 1364, 1367 (9th Cir. 1990)).  A court's

9 decision to decline jurisdiction "does not rest on a mechanical

10 checklist," but rather depends on "a careful balancing of the

11 important factors as they apply in a given case."  Moses H. Cone,

12 460 U.S. at 16.

13      The obligation of a federal court to hear cases under its

14 jurisdiction is "particularly weighty" where the federal

15 plaintiffs seek relief under section 1983.  Attwood v. Mendocino

16 Coast Dist. Hosp., 886 F.2d 241, 244 (9th Cir. 1989) (quoting

17 Tovar v. Billmeyer, 609 F.2d 1291, 1293 (9th Cir. 1979)).  "Under

18 such circumstances conflicting results, piecemeal litigation, and

19 some duplication of judicial effort is the unavoidable price of

20 preserving access to the federal relief which section 1983

21 assures."  Id.

22              **1.   Adequacy of State Court Proceedings**

23      An important consideration under a Colorado River analysis

24 is whether, in the case of stay or dismissal, the state court

25 proceedings will be an adequate forum for Plaintiffs' claims.

26 Moses H. Cone, 460 U.S. at 26-27.  Stay or abstention is

11

1  inappropriate where "substantial room for doubt" exists as to

2  whether the state court can provide relief.   Id.

3      Plaintiffs argue that an order of this Court dismissing

4  their action might result in their claims being barred by the

5  statute of limitations.   See Cal. Gov't Code § 945.6 (Deering

6  2005) (six month statute of limitations for suits against a

7  public entity).   Defendants do not dispute that the limitations

8  period applies, but rather assert that the state court can set

9  aside the dismissal of Plaintiffs' state claims.   California

10 Civil Procedure Code section 473(b) provides:

11          The court may, upon any terms as may be just,
            relieve a party or his or her legal
12          representative from a judgment, dismissal,
            order, or other proceeding taken against him
13          or her through his or her mistake,
            inadvertence, surprise, or excusable neglect.
14          Application for this relief . . . shall be
            made within a reasonable time, in no case
15          exceeding six months, after the judgment,
            dismissal, order, or proceeding was taken.
16

17     The state court entered the order of voluntary dismissal on

   July 14, 2005.   Therefore, Plaintiffs would be entitled to seek
18
   such relief until February 14, 2006.   It is not, however, a
19
   foregone conclusion that the state court would grant this relief.
20
   Section 473(b) allows the court to act "upon any terms as may be
21
   just."   The state court seems free to determine whether justice
22
   would require reinstating the suit.   This Court can speculate
23
   that, if the federal suit were dismissed, the state court might
24
   decide that Plaintiffs were surprised or mistaken by the
25
   circumstances following dismissal.   Nonetheless, "substantial
26

                                  12

1  room for doubt" as to the existence of a state forum exists.

2      Defendants contend that Plaintiffs should be barred from

3  invoking the inadequacy of the state forum to the extent that

4  they are responsible for rendering the forum inadequate.

5  Defendants provide no authority for this position, nor has the

6  Court discovered a case that supports it.  On the other hand,

7  another circuit has denied Colorado River dismissal on the ground

8  that, following multiple voluntary dismissals by plaintiff, no

9  state proceeding could protect plaintiff's rights.  McLaughlin v.

10 United Va. Bank, 955 F.2d 930, 935-36 (4th Cir. 1992).

11 McLaughlin held that absent a finding of bad faith, courts should

12 seek to efficiently and justly dispose of disputes before them.

13 Id.  Despite an overlap with various state suits, "principles of

14 res judicata, collateral estoppel, and equitable stay will help

15 minimize the potential for undue waste."  Id. at 936.

16     The absence of a state forum can weigh heavily against

17 dismissal, requiring the federal court to retain jurisdiction

18 despite other factors weighing against it.  Where the state case

19 has been dismissed, Colorado River relief can be improper even if

20 state litigation has been long and eventful and the plaintiff's

21 forum choice is strategic.  FDIC v. Nichols, 885 F.2d 633, 634-35

22 (9th Cir. 1989).  In Nichols, the state litigation had been

23 proceeding for five years, discovery had occurred, and at least

24 three motions had been decided.  Id.  In reversing the district

25 court's dismissal of the federal suit on the basis of forum

26 shopping, the court of appeals based its ruling on the fact that

13

1   the state suit had previously been dismissed without prejudice.
2   Id. at 638.  Despite the time and effort invested in the state
3   suit and the lower court's finding of forum shopping, the Ninth
4   Circuit held that the district court abused its discretion by
5   dismissing the federal suit when no concurrent or pending state
6   court suit existed.   Id.

7        Here, the state case has been voluntarily dismissed and
8   potentially could be barred.  Because a federal court has a
9   "virtually unflagging obligation" to exercise jurisdiction, the
10  Court finds that the "substantial room for doubt" concerning the
11  adequacy of the state forum weighs heavily against dismissal.

12                    **2.   Forum Shopping**

13       In deciding whether to dismiss or stay, a court may also
14  consider whether the federal plaintiff is engaged in "forum
15  shopping" or seeks to avoid adverse state court rulings.
16  Nichols, 885 F.2d at 637; Nakash v. Marciano, 882 F.2d 1411, 1417
17  (9th Cir. 1989).  Federal courts may not decline to exercise
18  jurisdiction on this ground alone.   Nichols, 885 F.2d at 637.

19       Plaintiffs all but concede that they are filing the federal
20  lawsuit for forum shopping purposes.  Plaintiffs acknowledge that
21  the Supreme Court of California has rejected the interpretation
22  of federal law that they prefer.  Opp'n at 16 n. 4; see County of
23  L.A. v. Super. Ct., 21 Cal. 4th 292, 307 (1999) (holding that
24  pain and suffering damages are not available to survivors where a
25  section 1983 plaintiff dies while his suit is pending).
26  Plaintiffs argue:

                              14

> When Plaintiffs filed their first State Court
> Complaint, they believed that the Superior
> Court of the State of California was an
> equally appropriate forum, and that they had
> no reason to file suit in Federal Court.
> However, Robert Oglesby's unfortunate death
> **after** the initiation of the State Court
> action forced Plaintiffs to properly
> reevaluate the appropriateness of a State
> Court forum in this matter.

Opp'n at 13-14 (emphasis in original).

The Court seriously doubts how Plaintiffs' filing suit in another forum in order to avoid unfavorable precedent applicable only to the original forum is not garden-variety forum shopping. See Black's Law Dictionary 655 (6th Ed. 1990) ("Forum shopping. Such occurs when a party attempts to have his action tried in a particular court or jurisdiction where he feels he will receive the most favorable judgment or verdict."). Plaintiffs' actions appear to be for the sole reason of avoiding an unfavorable ruling, which would cripple their case, that is virtually inevitable in state court. Plaintiffs attempt to justify their second-choice of the federal forum by arguing that the issue is unresolved and should be settled by a federal court. Plaintiffs specify no authority that an unresolved federal question can affect the Court's finding of forum shopping in a Colorado River analysis. The forum shopping factor is not dispositive, but weighs in favor of a stay or dismissal.

### 3.  Applicable Law

Courts deciding whether to stay or dismiss on a Colorado River rationale consider whether the case concerns federal law

1  issues.  Defendants urge that the state law issues that underlie

2  Plaintiffs' complaint counsel in favor of dismissal.  The

3  presence of state law issues is rarely sufficient to warrant a

4  federal court to abandon its jurisdiction.  Nakash, 882 F.2d at

5  1416.  In fact, "the presence of federal-law issues must always

6  be a major consideration weighing against surrender [of

7  jurisdiction]."  Id. (quoting Moses H. Cone, 460 U.S. at 26).

8  Where state and federal courts have concurrent jurisdiction over

9  a claim, this factor is less significant to a Colorado River

10  determination.  Id.

11     Plaintiffs here bring federal claims under section 1983 in

12  addition to claims based solely on California law.  California

13  courts exercise concurrent jurisdiction over section 1983 claims.

14  Ochoa v. Super. Ct., 39 Cal. 3d 159, 173 n. 10 (Cal. 1985);

15  Miller v. County of Santa Cruz, 39 F.3d 1030, 1038 (9th Cir.

16  1994).  Plaintiffs allege that this case rests on "a critical,

17  unresolved issue of federal, and not state, law," which weighs in

18  favor of this Court exercising jurisdiction.[4]  The Court finds no

19  authority that counsels against Colorado River relief on the

20  basis of the novelty of federal law issues.  State courts are

21  competent to decide federal law issues under section 1983,

22  whether novel or mundane.  The combination of state and federal

23

24     [4]The parties dispute whether the Ninth Circuit has precluded
survivors in section 1983 cases from recovering for a decedent's
pain and suffering.  It is undisputed that the Supreme Court of

25  California, interpreting federal law, has decided that such
survivors are not entitled to recover.  See County of L.A. v.

26  Super. Ct., 21 Cal. 4th 292, 307 (1999).

1  claims in this case does not weigh for or against declining

2  jurisdiction.  Rather, the existence of concurrent jurisdiction

3  in this case makes this factor unimportant to the decision to

4  stay or dismiss.

5       **4.   Where Jurisdiction Was First Obtained**

6       Another factor bearing on declining jurisdiction is whether

7  jurisdiction was first obtained in state or federal court.  The

8  priority of the suits should be measured not solely by which case

9  was filed first, but by comparing how far each suit has

10 progressed.  <u>Moses H. Cone</u>, 460 U.S. at 21.  In <u>Colorado River</u>,

11 "'the apparent absence of any proceedings in the District Court,

12 other than the filing of the complaint, prior to the motion to

13 dismiss'" was a factor favoring dismissal.  424 U.S. at 820; <u>see</u>

14 <u>Moses H. Cone</u>, 460 U.S. at 22.  Where "substantive progress" has

15 occurred in the state court litigation, "[h]aving elected state

16 court, plaintiff should be bound by its choice absent compelling

17 reasons to seek relief in another forum."  <u>Am. Int'l</u>

18 <u>Underwriters, Inc. v. The Cont'l Ins. Co.</u>, 843 F.2d 1253, 1258-59

19 (9th Cir. 1988).

20      The mere existence of a state court suit, however, does not

21 justify abstention.  <u>Herrington v. County of Sonoma</u>, 706 F.2d

22 938, 940 (9th Cir. 1983).  Courts regularly deny abstention where

23 the state case is in its early stages.  <u>See, e.g.</u>, <u>Easter v.</u>

24 <u>Amer. W. Fin.</u>, 202 F. Supp. 2d 1150, 1155 (W.D. Wash. 2002)

25 (denying abstention where action was in its initial stages and no

26 discovery had taken place); <u>Herrington</u>, 706 F.2d at 940 (denying

17

1    abstention where federal and state actions were filed almost

2    simultaneously and the state action was not at "an advanced

3    stage").

4         Since the state case was filed on September 30, 2004, the

5    litigation has progressed in a number of ways, according to

6    Defendants:  Defendants have answered Plaintiffs' complaint, the

7    County has propounded form and special interrogatories and

8    requests for admissions, the County has conducted "an exhaustive

9    investigation" and has collected medical and employment records,

10   and, in connection with the discovery requests, Defendants have

11   filed a motion to compel.  A date has been set for a mandatory

12   settlement conference, which has not been held.  The trial was

13   set for November 2005.

14        It is undisputed that the state case was pending for several

15   months prior to the federal case, and was nearing a trial date.

16   This passage of time does not itself create an impetus to stay or

17   dismiss the case.  The overall amount of judicial and attorney

18   labor expended on the case is not such that "considerations of

19   'wise judicial administration'" weigh in favor of dismissal.

20   Defendants do not claim that the state court had made any

21   important or time-consuming rulings, or expended any significant

22   labor on the case.  Defendants claim they have expended a

23   substantial amount of effort answering the complaint, preparing

24   discovery requests, investigating Plaintiffs' claim, and

25   preparing a motion to compel.  If the state case is as similar to

26   the federal case as Defendants claim, then their previous efforts

1  were not a total waste because they will further the defense of

2  this federal action.   The Court is aware that extra time and

3  effort will be necessary to conform work product from the state

4  case to meet federal specifications.   Nevertheless, it does not

5  appear that "substantive progress" has occurred at the state

6  level to create the "exceptional circumstances" that justify

7  dismissal or stay under <u>Colorado River</u>.   See <u>Am. Int'l</u>

8  <u>Underwriters</u>, 843 F.2d at 1258-59.

9               **5.   Avoiding Piecemeal Litigation**

10      The danger of piecemeal litigation concerns the prospect

11  that different courts might "consider the same issue, thereby

12  duplicating efforts and possibly reaching different results." <u>Am.</u>

13  <u>Int'l Underwriters</u>, 843 F.2d at 1258; <u>Travelers Indem. Co.</u>, 914

14  F.2d at 1369.   In  <u>American International Underwriters</u>, the

15  possibility of piecemeal litigation existed, despite a stay of

16  the state litigation.   843 F.2d at 1258.   This possibility

17  existed because the state court had decided several substantive

18  issues, such as whether plaintiff's loss fell within insurance

19  policy terms.   <u>Id.</u>   Consequently, the district court would be

20  forced to decide these issues anew, which would duplicate effort

21  and threaten to create inconsistent results.   <u>Id.</u>

22      No similar risk of piecemeal litigation exists here.   The

23  state court has made no substantive rulings in this case that a

24  federal court might have to decide anew.   There is no indication

25  that the state suit will be reinitiated after the federal suit

26  begins and then generate duplicative rulings.   In any event, the

19

state and federal courts adhere to "principles of res judicata,

collateral estoppel, and equitable stay" that can ameliorate the

potential for future waste of judicial resources.  See

McLaughlin, 955 F.2d at 936.  This factor does not weigh in favor

of dismissal.[5]

### 6.   Inconvenience of Federal Forum

The inconvenience of the federal forum can weigh in favor of

dismissal or stay under Colorado River.  Travelers Indem. Co.,

914 F.2d at 1368.  The issue is not whether the federal forum "is

a 'better' or 'more convenient' forum," but rather "whether the

inconvenience of the federal forum is so great that this factor

points toward abstention."  Id.

The Travelers Indemnity Co. court upheld the district

court's finding that a 200 miles of extra travel required to

reach the federal court did not weigh in favor of abstention.

---

[5]Defendants contend that where the federal action is reactive and vexatious, the factor of avoiding piecemeal litigation is heavily weighted in favor of abstention.  The Supreme Court has concluded the notion that the "vexatious or reactive nature" of litigation should weigh in favor of abstention "has considerable merit."  Moses H. Cone, 460 U.S. at 17 n. 20.

Defendants claim that the federal action is reactive and vexatious because, in the state case, Plaintiffs have so far failed to produce discovery that supports their claims.  Defendants assert that the federal case is therefore a delaying tactic.

Plaintiffs' refiling also requires Defendants to redo or revise certain tasks they completed according to state court procedure.  Plaintiffs' choice to file in federal court has undoubtedly caused some inconvenience for Defendants.  This was compounded by Plaintiffs' failure to inform Defendants that the state cases had been dismissed until over a month afterward.  Woods Supp. Decl. at 2.  This conduct, albeit perhaps discourteous, does not alter the Court's finding that the threat of piecemeal litigation is virtually nonexistent in this case.

1   <u>Id.</u>  The Court takes judicial notice of the fact that the

2   distance from the Metropolitan Division of the Superior Court for

3   County of Kern, the venue of the state suit, to the district

4   courthouse in Fresno is substantially less than 200 miles.  <u>See</u>

5   Fed R. Evid. 201(b) (a court may take judicial notice of facts

6   "not subject to reasonable dispute").  Even if the parties must

7   travel to Fresno and obtain lodging, the inconvenience of the

8   federal forum is relatively minor.  The Court finds that this

9   factor does not weigh in favor of stay or dismissal.

10               **7.   Balancing the Factors**

11      On the facts of this case, only two of the aforementioned

12   factors have any bearing on a determination of whether to stay or

13   dismiss under <u>Colorado River</u>.  The doubt regarding the adequacy

14   of the state forum for this case weighs heavily in favor of

15   retaining jurisdiction.  <u>See</u> <u>Nichols</u>, 885 F.2d at 634-35;

16   <u>McLaughlin</u>, 955 F.2d at 935-36. On the other hand, the only

17   factor counseling against a stay is that Plaintiffs selected the

18   federal forum in order to avoid unfavorable precedent binding

19   only on the state court.  Forum shopping alone, however, is not

20   grounds for a stay or dismissal under <u>Colorado River</u>, especially

21   where the state action has been dismissed.  <u>See</u> <u>Nichols</u>, 885 F.2d

22   at 637.  Defendants have not met their particularly weighty

23   burden to show that exceptional circumstances favor a stay or

24   dismissal in this case.  Defendants' motion to dismiss or stay on

25   <u>Colorado River</u> grounds is DENIED.

26

1      **ACCORDINGLY,** Defendants' motion to dismiss or stay is

2  DENIED.

3

4

5  IT IS SO ORDERED.

6  **Dated:  November 4, 2005**              **/s/ Robert E. Coyle**
   810ha4                            UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26